UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| HELENE MICHEL, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 7:16-cv-00863-RDP-HNJ |
| } | |
| FEDERAL BUREAU OF PRISONS FCI, } | |
| et al., } | |
| } | |
| Defendants. | |

## MEMORANDUM OPINION

On November 15, 2017, the Magistrate Judge's Report and Recommendation was entered and the parties were allowed therein fourteen days in which to file objections to the recommendations made by the Magistrate Judge. (Doc. #35). In his Report and Recommendation, the Magistrate Judge recommended that the court (1) dismiss without prejudice Warden Patricia Bradley ("Bradley") from this action; (2) dismiss without prejudice the Federal Bureau of Prisons FCI ("BOP"); and (3) deny without prejudice Defendants' Motion to Dismiss Plaintiff's Federal Tort Claims Act ("FTCA") and *Bivens*[1] claims. (*Id.*). On December 6, 2017,[2] Defendants filed objections to the Magistrate Judge's Report and Recommendation. (Doc. #40). Specifically, Defendants object to (1) the Magistrate Judge's application of the prison mailbox rule to the FTCA's presentment requirement and (2) the finding that the administrative remedy process was unavailable to Plaintiff regarding her *Bivens*

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcostics*, 403 U.S. 388 (1971).

[2] The court granted Defendants a seven day extension to file objections. (Doc. #37).

claim. (*Id.*). Plaintiff has not objected to the Report and Recommendation. (Doc. #38). No objections have been filed regarding the dismissals of Bradley or the BOP.

After careful consideration of the record in this case, the Magistrate Judge's Report and Recommendation, and Defendants' objections thereto, the court hereby **ADOPTS** the Report of the Magistrate Judge. The court **ACCEPTS** the recommendations of the Magistrate Judge that Bradley and the Federal Bureau of Prisons FCI be dismissed without prejudice from this case. Despite Defendants' objections, which are discussed below, the court **FURTHER ACCEPTS** the recommendations of the Magistrate Judge that the court deny without prejudice Defendants' Motion to Dismiss Plaintiff's FTCA and *Bivens* claims against the remaining defendants.

**I. Application of the Prison Mailbox Rule to the FTCA's Presentment Requirement**

Defendants assert that application of the prison mailbox rule to the presentment requirement of 28 U.S.C. § 2675(a) is inconsistent with the United States' limited waiver of sovereign immunity under the FTCA. (Doc. #40 at 5-20). More specifically, Defendants argue that the court does not have subject matter jurisdiction over Plaintiff's claims because first, as a matter of law, she did not present her claims to the agency because the agency did not obtain "actual receipt" of her administrative appeal and, second, as a factual matter, Plaintiff does not sustain her burden of demonstrating presentment of the administrative appeal. (*Id.*). Defendants falter on both fronts.

"The FTCA is a specific, congressional exception to the general rule of sovereign immunity [in that it] allows the government to be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government." *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994). Title 28 U.S.C. § 2675(a) sets forth one condition of the government's waiver of sovereign immunity under the FTCA:

2

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). "A claim is deemed to be presented 'when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 ["SF95"] or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the accident.'" *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1236-37 (11th Cir. 2002) (quoting 28 C.F.R. § 14.2(a)).

In order to satisfy the presentment requirement in 28 U.S.C. § 2675(a), a plaintiff is not necessarily required to present affirmative evidence of actual receipt by the agency. *Id.* at 1239 ("While we agree with the fundamental premise that a claim is presented upon its receipt, we cannot go so far as to say that affirmative evidence of such receipt is required."). A plaintiff creates a presumption that the agency received her SF95 when she demonstrates that her completed SF95 was (1) properly addressed, (2) stamped, and (3) mailed. *Id.* at 1240. However, a plaintiff need not achieve this high level of proof to create such a presumption. *Id.* at 1238-40. For instance, in *Barnett v. Okeechobee Hospital*, a plaintiff's statement that he mailed a completed SF95 to the relevant agency, along with copies of his accompanying cover letter and the prepaid postage reply envelope in which he allegedly mailed it, raised an inference -- although not conclusive proof -- that the plaintiff mailed a completed SF95 to the relevant agency. *Id.* Declarations from agency employees that the agency did not receive the plaintiff's SF95 do not rebut the presumption of receipt because the "court c[an] not rely on the bare

3

assertion of one member of the office that the mail was not received, since the mail might have been received by another." *Id.* at 1241-42.

In *Garvey v. Vaughn*, the Eleventh Circuit extended the prison mailbox rule articulated in *Houston v. Lack*[3] "to pro se prisoners filing complaints in section 1983 cases and claims under the Federal Tort Claims Act." 993 F.2d 776, 783 (11th Cir. 1993). The Court further explained that, for these cases, "*the date of filing shall be that of delivery to prison officials* of a complaint or other papers destined for district court for the purpose of ascertaining timeliness." *Id.* (emphasis in original). Although the Eleventh Circuit has established that the prisoner mailbox rule applies to the FTCA for statute of limitations purposes, no binding precedent for this court has settled "whether the prison mailbox rule extends to the filing of the administrative claim itself." *Echemendia v. United States*, -- Fed.App'x --, 2017 WL 4334121, at *2 n.3 (11th Cir. Sept. 29, 2017). However, the principles underlying *Garvey* -- *i.e.*, there are situations beyond a prisoner's control that, depending upon the circumstances of a case, should not be construed against a prisoner in determining when a pleading is filed -- buttress the reasoning behind extending the prison mailbox rule to the presentment requirement:

> Unskilled in law, unaided by counsel, and unable to leave the prison, [a *pro se* prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities— and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Garvey*, 993 F.2d at 780 (quoting *Houston*, 487 U.S. at 271-72); *cf. Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) ("Since, with regard to the difficulties inherent in being a *pro se* prisoner litigant, we see no difference between the filing of a court action and the filing of an

---

[3] In *Houston*, the Supreme Court held that a *pro se* prisoner's notice of appeal was filed when it is delivered to prison authorities for forwarding to the district court. *See* 487 U.S. 266 (1988).

administrative claim, we hold that [our prior ruling[4] that the filing of a § 1983 complaint occurs upon delivery to a prison official also] applies to an FTCA administrative filing."). *But see Censke v. United States*, No. 1:16-cv-02761-TWP-MJD, 2017 WL 4099208, at *4 (S.D. Ind. Sept. 15, 2017)[5] ("[B]ecause an administrative filing pursuant to the FTCA is not a court filing, and because the BOP regulation defines presentment of a claim as when it is received by the federal agency, the 'prison mailbox rule' does not apply to [the plaintiff's] presentment of his SF-95 to the BOP in this case."). The court agrees with the Magistrate Judge that a holding that the prison mailbox rule applies to the administrative filing of a FTCA claim most closely aligns with the precedent set forth by the Eleventh Circuit in *Barnett*, 283 F.3d 1232, and *Garvey*, 993 F.2d 776.

As an alternative to its argument that the prison mailbox rule does not apply to the FTCA, Defendants assert that the Report and Recommendation does not include a factual finding that Plaintiff sent the SF95 through the legal mail system or the prison's regular mail system. (Doc. #40 at 14). However, in the Report and Recommendation, the Magistrate Judge stated, "[U]nless the defendants establish otherwise, the plaintiff's FTCA form is deemed filed on May 24, 2016." (Doc. #35 at 12). In considering the merits of Defendants' Motion to Dismiss, the Magistrate Judge relied on Plaintiff's Amended Complaint, which was submitted under oath, and accepted Plaintiff's statement that "[o]n June 10th, 2016, [she] submitted Standard Form 95 Claim for Damages, Injury or Death to South East Regional Office [of the Bureau of Prisons]." (Doc. #27

---

[4] Notably, the *Tapia-Ortiz* decision focused on whether the prison mailbox rule rendered a filing timely, not whether the filing was actually presented to the agency; nevertheless, the principles underlying the Second Circuit's extension of the prison mailbox rule to FTCA administrative filings supports the ruling in this case. *See Tapia-Ortiz*, 171 F.3d at 152 (citing *Dory v. Ryan*, 999 F.2d 679 (2d Cir. 1993)).

[5] Defendants use *Censke* as support for their argument that the prison mailbox rule does not apply to the FTCA. (Doc. #40 at 16-17). However, *Censke* is at odds with Eleventh Circuit precedent in that the *Censke* ruling is based on "substantial" Seventh Circuit authority "that presentment occurs not when a claim is mailed but when it is received by the agency." 2017 WL 4099208, at *3.

at 3). Defendants did not provide the court with sufficient evidence[6] to rebut this presumption of receipt. *See Barnett*, 283 F.3d at 1241-42 (finding that declarations from employees that an agency did not receive an administrative claim do not, on their own, rebut the presumption of receipt). As such, the court deems it appropriate to deny Defendants' Motion to Dismiss without prejudice as to Plaintiff's FTCA claims.

## II. Finding that the Administrative Remedy Process Was Unavailable to Plaintiff

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust her available administrative remedies prior to bringing a suit regarding prison conditions. *See* 42 U.S.C. § 1997e(a). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court follows the following process:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. . . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

---

[6] In *Houston*, the Supreme Court noted that the prison, and not the plaintiff, is the party with access to evidence so as to resolve issues regarding whether a prisoner timely tendered a claim to prison authorities for mailing. 487 U.S. at 276. The prison -- FCI Aliceville -- could have provided the court with its mail logs to establish it did not receive any documents from Plaintiff on the date she allegedly mailed her SF95.

In arguing that Plaintiff's FTCA claims are barred for failure to exhaust administrative remedies, Defendants have presented a factual attack to the court's subject matter jurisdiction over Plaintiff's claims. When a court is confronted with a factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).

Upon this court's referral of the remaining claims in this case to the Magistrate Judge for further proceedings, the Magistrate Judge should allow limited discovery on subject matter jurisdiction and whether Plaintiff submitted the SF95 as she alleges.

*Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

A prisoner's exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust *available* remedies, but need not exhaust *unavailable* ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (emphasis added). "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Similarly, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Administrative remedies are also considered "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Defendants (1) challenge the Magistrate Judge's conclusion that the BOP remedy process was "unavailable" to Plaintiff and (2) assert that the Magistrate Judge incorrectly applied the two-step process in *Turner*, 541 F.3d 1077. (Doc. #40 at 27-33). Those arguments miss the mark. To begin, the current record demonstrates that the BOP unilaterally and randomly assigned Plaintiff's grievances -- which all focused on the same medical problems -- to one of three remedy series. Officials gave some grievances new remedy series numbers and deemed others appeals and rejected them for filing at the wrong level, regardless of how Plaintiff attempted to label the grievances.[7] (Doc. #35 at 22-27). Because this process created an untimely appeal or a new remedy request (where a filing also may have been viewed as a timely appeal), the Magistrate Judge concluded that these seemingly random assignments to remedy

---

[7] The decision to assign a grievance to a new remedy series rather than an existing series affected the timeliness of Plaintiff's appeals as well as the determination of whether Plaintiff timely filed a remedy request. For example, Plaintiff filed an administrative remedy on March 12, 2014, which officials rejected as filed at the wrong level. (Doc. #29-2 at 4). Plaintiff refiled that claim at the proper (institutional) level, but officials assigned it a new remedy number and rejected it for being both too long and not containing enough detail. (*Id.* at 4-5). After several more rejected filings, Plaintiff submitted a regional appeal in the second remedy series, which was assigned to the first series and rejected as a refiling of the March 12, 2014 grievance. (*Id.* at 4).

7

series defeated Plaintiff's ability to exhaust her administrative procedures. (*Id.* at 23-29). At this stage, without explaining how the agency assigned Plaintiff's filings, Defendants cannot escape the preliminary finding that they prevented Plaintiff from exhausting her administrative remedies.

Furthermore, the Magistrate Judge considered every administrative remedy submitted by Plaintiff, the date of the submission, the assignment of the submission to one of three remedy series, the content of the submission, and the stated reason(s) for rejection. (*Id.* at 24-28). After a detailed review of the parties' respective factual assertions, the Magistrate Judge concluded that Defendants "limit[ed] access to a procedure and then protect[ed] themselves from suit by alleging the prisoner failed to use that specific procedure." (*Id.* at 29 (citing *Presley v. Scott*, 679 F. App'x 910, 912 (11th Cir. 2017) (reversing district court dismissal for lack of exhaustion, because administrative procedures were unavailable when not listed on law library computer)). Ultimately, after rendering specific factual findings to resolve disputed factual issues as required by *Turner*, 541 F.3d 1077, the Magistrate Judge recommended denial of Defendants' Motion to Dismiss for failure to exhaust administrative remedies. The court agrees that Defendants did not uphold their burden "of proving that the plaintiff has failed to exhaust [her] available administrative remedies." *Turner*, 541 F.3d at 1082. Accordingly, the court adopts the Magistrate Judge's rulings.

**III. Conclusion**

For the reasons explained above, the court **OVERRULES** Defendants' objections and **ACCEPTS** the Magistrate Judge's Report and Recommendation. The court **REFERS** the remaining claims to the Magistrate Judge for further proceedings. An Order in accordance with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 13, 2018.

  /s/ R. David Proctor
 _____
 **R. DAVID PROCTOR**
 UNITED STATES DISTRICT JUDGE